Narda C. OFFUTT, Individually and
on behalf of Kristine J. Offutt, a
minor, Plaintiffs,

v.

The Honorable Judge Jordan KAPLAN,
Arthur M. Berman, Howard Bernstein,
and Gerald Moody Offutt, Defendants.

No. 94 C 4476.

United States District Court,
N.D. Illinois,
Eastern Division.

April 12, 1995.

Narda Julie Cisco, Bloomington, IL, Edward Hubbard, Chicago, IL, for plaintiffs.

Thomas Lee Ciecko, J. Cunyon Gordon, Ray G. Rezner, Mark Scott Bernstein, James A. Burnham, James Peter Fieweger, Chicago, IL, for defendants.

### MEMORANDUM AND ORDER

MANNING, District Judge.

### I. INTRODUCTION.

Plaintiff, Attorney Narda Cisco Offutt (hereinafter "Mrs. Offutt"), on her own behalf *Pro Se* and on behalf of her minor child, Kristine J. Offutt (hereinafter "Kristine"), filed the instant action in July 1994, alleging that defendants, the Honorable Judge Jordan Kaplan (hereinafter "Judge Kaplan"), who formerly presided in custody proceedings involving Kristine in the Circuit Court of Cook County, Gerald Offutt (hereinafter "Mr. Offutt"), Mrs. Offutt's former husband and father of Kristine, Howard Bernstein (hereinafter "Mr. Bernstein"), guardian *ad litem,* for Kristine and Arthur M. Berman (hereinafter "Mr. Berman"), Mr. Offutt's attorney in the custody proceedings, violated plaintiffs' civil rights in connection with custody proceedings which continue to pend in the Circuit Court of Cook County.

Plaintiffs seek a writ of mandamus against Judge Kaplan directing him to vacate the appointment of Mr. Bernstein as guardian *ad litem,* as well as other orders, for entry of an order staying proceedings in *Offutt v. Offutt,* case number 87D20050, filed in the Circuit Court of Cook County, and for entry of a judgment against all the defendants in the sum of $50 million dollars for damages, punitive damages and costs. Plaintiffs allege that defendants violated their rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment, and 42 U.S.C. 1983, and invoke jurisdiction pursuant to 28 U.S.C. 1651, 28 U.S.C. 1343, 1332, 1331 and the Civil Rights Act of 1964, as amended, (42 U.S.C. 2000e et seq.).

This matter is before the court on defendants' motions to dismiss this action, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

### II. PROCEDURAL HISTORY.

Narda Cisco Offutt and Gerald Moody Offutt were married in Chicago, Illinois in April of 1982. On August 28, 1984, Kristine, their daughter was born. On October 22, 1987, Mr. Offutt filed a petition in the Circuit Court of Cook County for dissolution of the marriage and for custody of Kristine. Mr. Berman represented Mr. Offutt at the outset of that action and continues to do so. In June 1992, Mr. and Mrs. Offutt entered into a joint parenting agreement (hereinafter "Agreement"). The Judgment for Dissolution of Marriage and a Supplemental Judgment for Dissolution of Marriage were merged and the court retained jurisdiction of the cause.

Subsequent to the entry of the parenting agreement, Mr. Offutt filed a rule to show cause why Mrs. Offutt should not be held in contempt of court for violating his rights under the parenting agreement. Mrs. Offutt contends, however, that she was not properly served with the rule and hence, did not appear for the hearing.

On March 11, 1994, in granting Mr. Offutt's petition ex parte after a hearing and awarding him temporary physical custody of Kristine, the circuit court expressly found that: (1) A rule to show cause had been previously entered against Mrs. Offutt for her failure to comply with visitation orders of the court; (2) The rule to show cause was served upon Mrs. Offutt; (3) Mrs. Offutt failed to appear in court in response to the rule; and (4) He perceived an unwillingness

on the part of Mrs. Offutt to encourage a close and continuing relationship between Mr. Offutt and Kristine. The transcript of the hearing was incorporated into the court's order.

Mrs. Offutt has asserted that she filed a timely motion in the Circuit Court to vacate the custody order. In that motion to vacate she alleged that: (1) She had not received proper notice of the rule to show cause; (2) Mr. Offutt and Mr. Berman conspired to defraud the circuit court regarding that service; and (3) Mr. Offutt had failed to inform the circuit court that he is legally blind and had been on steroids for about twenty-five years causing him extreme emotional instability. Mrs. Offutt sought to vacate any and all orders awarding temporary physical custody to Mr. Offutt, vacate the supplemental judgment for dissolution of marriage entered on July 8, 1992, or alternatively to vacate any and all portions of any orders or judgments which relate to the care, custody and support of Kristine and to be accorded an opportunity to present facts bearing on the best interests of the child. Mrs. Offutt states that her motion to vacate is currently pending in the Circuit Court of Cook County.

In July 1994, plaintiffs filed this action alleging that defendants violated plaintiffs' rights under the Due Process and the Equal Protection Clauses of the Fourteenth Amendment of the United States Constitution, and 42 U.S.C. 1983, and invoke jurisdiction pursuant to 28 U.S.C. 1651, 28 U.S.C. 1343, 28 U.S.C. 1332, 28 U.S.C. 1331 and 42 U.S.C. 2000e et seq. of the Civil Rights Act of 1964.

Mrs. Offutt alleges that in the latter part of the 1980's she worked as an assistant United States attorney at a time when the United States Attorney's Office prosecuted a number of matrimonial lawyers who practiced in the domestic relations division of the Circuit Court of Cook County during "Operation Greylord" (hereinafter "Greylord"). Mrs. Offutt further alleged that hostility and apprehension resulted toward her as a result of Greylord. Mrs. Offutt contended that having knowledge of the hostility and apprehension due to Greylord, Mr. Offutt filed a meritless pleading and court action with the

intention of denying plaintiffs their Due Process and Equal Protection rights or with the intention of harassing plaintiffs.

Additionally, plaintiffs assert that Judge Kaplan, whom they allege is a white male, intentionally violated plaintiffs' federal civil rights: (1) by failing to maintain impartiality and objectivity; (2) by appointing Mr. Bernstein as guardian *ad litem;* (3) when he failed to interview plaintiff; (4) when he failed to consider the best interest of Kristine; and (5) by appointing a guardian *ad litem* who is a white male for Kristine, who is a black, Episcopalian female. According to Mrs. Offutt, Mr. Bernstein and Mr. Berman, both white males, and Mr. Offutt, a black male, induced Judge Kaplan, also a white male, to discriminate against plaintiffs based on race, sex, color and religion. Plaintiffs claim irreparable harm due to defendants' precluding Kristine's attendance at a prominent Episcopalian girls' school in Washington, D.C., where prominent figures such as Vice President Al Gore's daughter attends, and James Baker, former Secretary of State, educated his daughter.

## A. JUDGE KAPLAN'S MOTION TO DISMISS.

Judge Kaplan filed a motion to dismiss plaintiffs' claim on grounds that the federal court lacks jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. He contends that the complaint is brought under 42 U.S.C. § 1983 and as requested relief, plaintiffs seek to have this court issue a writ of mandamus directing him to vacate the appointment of the guardian *ad litem* and stay the proceedings in *Offutt v. Offutt,* No. 87D20050. Judge Kaplan asserts that a federal district court has no general mandamus jurisdiction to compel action by a state court judge and no power to issue a writ of mandamus directing state court judges in the performance of their duties, citing *Archer v. Superior Court of California,* No. C94–20019 RMW, order at 2 (N.D.Ca.1994) (1994 U.S.Dist.Lexis 6651); and *Jones v. Burris,* 825 F.Supp. 860, 861 (N.D.Ill.1993). He further asserts that he has recused himself from the *Offutt* case and since plaintiffs will not

appear before him they have no standing and hence, there is no jurisdiction in this court to issue a writ of mandamus, citing *Deimler v. Pease*, 919 F.2d 143 (7th Cir.Ill.1990).

## B. HOWARD BERNSTEIN'S MOTION TO DISMISS.

Mr. Bernstein contends in his motion to dismiss based upon Fed.R.Civ.Pro. 12(b)(6), that the complaint strings together a series of broad legal conclusions and allegations of civil rights violations without alleging: (1) specific facts supporting plaintiffs' contention that Mr. Bernstein has violated federal laws; (2) what protectible interest Mr. Bernstein has allegedly violated; or (3) that Mr. Bernstein was acting under color of state law. Bernstein also claims that his status as a guardian *ad litem* gives him absolute immunity from suit in the performance of his guardian *ad litem* duties.

## C. GERALD OFFUTT AND ARTHUR M. BERMAN'S MOTION TO DISMISS.

Mr. Offutt and Mr. Berman assert that this Court lacks subject matter jurisdiction because this action is a transparent effort to litigate issues raised in and relevant to the pending circuit custody dispute in the Circuit Court of Cook County. Mr. Offutt and Mr. Berman further assert that even if this court could exercise subject matter jurisdiction over this action, the principles of the *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.E.2d 669 (1971), abstention doctrine compel this court to abstain from entertaining this dispute and thereby interfering with the circuit court proceedings. Finally, Mr. Offutt and Mr. Berman assert that plaintiffs have not and cannot plead facts sufficient to state a cause of action under the various federal authorities she cites in her petition.

## D. PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PROTECTIVE ORDER.

While awaiting a ruling on defendants' motions to dismiss, plaintiffs sought in this court, through a motion for temporary restraining order and/or protective order to stay or enjoin all discovery in the pending court matter. Mrs. Offutt contended that it is impossible for her and Kristine to defend in the state court dispute and in this court without revealing information which violates § 794(a) of Title 18 of the United States Code.

A similar motion for a protective order had been filed in the Circuit Court of Cook County and was denied. The Illinois Appellate Court denied the same motion as well as plaintiffs' request for that court to hear an interlocutory appeal pending in that court on an expedited basis.

■ Plaintiffs maintained that, pursuant to 28 U.S.C. § 1331, the federal district court has original jurisdiction over enforcement of matters involving § 794(a) of Title 18 of the United States Code, which section addresses federal treason and sedition laws. In her motion for injunctive relief or protection, she also made passing reference to Federal Rules of Civil Procedure 16(c), 26(c) and 65, 28 U.S.C. 1441(a), (b), (c) and (e), 1446, 1447, and 1448.

Title 18 section 794(a) of the United States Code provides:

"Whoever, with intent or reason to believe that it is to be used to the injury of the United States or to the advantage of a foreign nation, communicates, delivers, or transmits, or attempts to communicate, deliver, or transmit, to any foreign government, or to any faction or party or military or naval force within a foreign country, whether recognized or unrecognized by the United States, or to any representative, officer, agent, employee, subject, or citizen thereof, either directly or indirectly, any document, writing code book, signal book, sketch, photograph, photographic, blueprint, plan, map, model, note, instrument, appliance, or information relating to the national defense, shall be punished by death or by imprisonment for any term of years or for life."

■ Section 794(a) is applicable to the act of obtaining or furnishing guarded information pertaining to the national defense of the United States government for use to the advantage of any foreign nation. *Gorin v. U.S.*, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488 (1941). In *Gorin* the court explained:

"... the information, documents or notes, which are alleged to have been connected with the national defense, may relate or pertain to the usefulness, efficiency or availability of * * * places, instrumentalities or things for the defense of the United States of America. The connection must not be a strained one nor an arbitrary one. The relationship must be reasonable and direct."

Plaintiffs contend that the federal question extends to the fact that when Kristine was admitted in 1993 to a school where Vice-President Al Gore's daughter and former Secretary of State James Baker's daughter attend, Narda Offutt was appointed as fourth grade representative and the official representative for parents of the school. Mrs. Offutt asserts security questions involved in the child custody dispute. She contends that if she divulges information about her activities concerning her appointment associated with Kristine's school, it would lead to treason and sedition because one cannot provide information to agents for persons acting on behalf of foreign countries. Mrs. Offutt has not established that she has obtained or furnished guarded information that is connected to national defense of the United States of America or has communicated that information to a foreign nation or would be required to if discovery is allowed to proceed. Thus, plaintiffs have failed to demonstrate that section 794(a) is applicable to their case.

Plaintiffs also contend that 28 U.S.C. 1441(a), (b), (c), and (e), and 1446, 1447, and 1448 are applicable. Section 28 U.S.C. 1441 provides:

(a) "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

(b) "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

(c) "Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire cause may be removed and the district court may determine all issues therein, or in its discretion, may remand all matters in which State law predominates."

(e) "The court to which such civil action is removed is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that claim."

■ Section 1446 provides procedures for removal; Section 1447 provides for procedures after removal generally; and Section 1448 provides for procedures after removal. The propriety of removal depends on whether the suit, as plaintiff framed or easily could have framed it in the complaint, would have been within this court's jurisdiction at the time of removal. *Navarro v. Subaru of America Operations Corp.*, 802 F.Supp. 191 (N.D.Ill.1992), citing *Federal Deposit Ins. Corp. v. Elefant*, 790 F.2d 661 (7th Cir.Ill. 1986). Section 1331 provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States. The plaintiffs have not, however, contended that there has been any procedures put in place to remove the state court action to the federal court nor does this court believe that the removal statute is applicable to this unique set of facts.

Plaintiffs assert that based upon Federal Rules of Civil Procedure 16(c), 26(c) and 65, their motion for a protective order and a temporary restraining order and preliminary injunction should be granted. However, we found that plaintiffs failed to present facts in the motion or by proffer which apply to Fed.Rule Civ.Pro. 16(c). Fed.Rule Civ.Pro. 16(c) provides for subjects for consideration

at pretrial conferences. Fed.Rule Civ.Pro. 26(c) provides *inter alia:*

"Upon motion by a party or the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including '...'"

Having heard oral arguments on plaintiffs hybrid motion for a protective order and temporary restraining order and Mrs. Offutt's written submissions and proffered testimony[1], the Court previously has determined that plaintiffs' sole basis for a protective order or temporary restraining order seems to be that it is impossible for plaintiffs to defend in the pending Circuit Court of Cook County child custody dispute and in this court without revealing information which violates section 794(a) of Title 18 of the United States Code. As previously stated, section 794(a) is not applicable to communications under the facts present in this case. Plaintiffs have not presented facts by affidavit, by verified complaint or by proffer that immediate and irreparable injury, loss, or damage will result to plaintiffs if their motion for a temporary restraining order or protective order is not granted. Plaintiffs' mere assertions that the basis for the protective order is that it is impossible for plaintiffs to defend in the pending Circuit Court of Cook County child custody dispute without revealing information which violates the federal treason and sedition laws are without merit. Plaintiffs have failed to sustain their burden of either showing likelihood of success on the merits or of immediate or irreparable injury, loss or damage, and hence were not entitled to temporary injunctive relief.

The basis for this finding is predicated on the absence of any facts which makes those facts which the court did find relevant to the pending state court case. It is undisputed that Mrs. Offutt was the fourth grade representative and the official representative for the parents of the school which Kristine attended while a resident of Washington, D.C.

While Mrs. Offutt represents that she holds secrets of national security which, if divulged, would subject her to criminal sanctions pursuant to § 794(a) of 18 U.S.C., she was unwilling to relate what these secrets pertained to (understandably), but more importantly, of what relevance these secrets are to the pending child custody case in the Cook County Circuit Court.

Plaintiffs assert that the court should stay discovery via interrogatories and deposition because of the aforesaid national security concerns. Mrs. Offutt contends that the secret that she inadvertently discovered would pose risks to the national security causing her to be subjected to allegations of treason should she be subjected to discovery in the state child custody proceedings. Likewise, plaintiffs were unable to establish that the court should intervene in the discovery process because of national security questions. Therefore, this court has previously denied plaintiffs' motion for a protective order to stay discovery in the state court child custody proceeding.

### III. ISSUES.

The issues which we must decide are: (1) Whether there is subject matter jurisdiction; (2) Whether the instant petition for a writ of mandamus states a claim upon which relief can be granted; (3) whether the abstention doctrine is applicable; and (4) Whether a court appointed guardian *ad litem* is clothed with the protection of absolute immunity in the performance of said guardian *ad litem's* duties.

### IV. DEFENDANTS' MOTION TO DISMISS.

### DISCUSSION.

■ In deciding a motion to dismiss, the court must accept as true the facts presented

---

**1.** Defendants submitted no written submissions, oral testimony or proffers (nor did they desire to) in opposition to the motion for temporary restraining order and protective order, but relied solely on oral argument.

in the complaint, and any inferences which may be drawn from them must be viewed in a light most favorable to the non-moving party; dismissal is appropriate only if the non-moving party can prove no set of facts which would entitle him to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); and *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In the case at bar plaintiffs contend that the portion of each defendant's motion which is based upon Fed.R.Civ.P. 12(b)(6) should be treated as a motion for summary judgment. Fed.R.Civ.P. 12(b) provides *inter alia:*

> "If, on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."

Rule 12(b) also provides that if a court, on a motion to dismiss, considers matters outside the pleading, the court shall treat the motion as one for summary judgment, and the nonmovant must be given a "reasonable opportunity" to contradict the material facts asserted by the moving party. *Curtis v. Bembenek,* 48 F.3d 281 (7th Cir.Ill. 1995).

> Rule 56 provides *inter alia:*
> "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof. * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."

When evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court focuses on the complaint, but may also take into account matters of public record, orders and items appearing in the record of the case. (*Harris Custom Builders, Inc. v. Hoffmeyer,* 834 F.Supp. 256 (N.D.Ill.1993)). In the instant case, the following matters of public record, orders or items related to the Circuit Court action were attached to Mr. Offutt's and Mr. Berman's memorandum in support of their motion to dismiss: (1) the Joint Parenting Agreement, (2) the Supplemental Judgment for Dissolution of Marriage, (3) Mr. Offutt's petition for temporary physical custody and rule to show cause, (4) a court order awarding temporary physical custody, (5) Mrs. Offutt's motion to vacate, (6) Mrs. Offutt's motion for recusal of judge, (7) Mrs. Offutt's motion for discharge of guardian *ad litem,* and (8) an order of assignment, reassignment and transfer between calendars. Since when evaluating a motion to dismiss under 12(b)(6) a court may take into account matters of public record, plaintiffs' contention that defendants' 12(b)(6) motions to dismiss should be treated as motions for summary judgment is without merit because only matters of public record are attached to the defendants' motions.

### A. Defendant Judge Jordan Kaplan:

We first address the issue of subject matter jurisdiction as it applies to Judge Kaplan. A federal district court generally has no jurisdiction to review state judicial proceedings. *Deimler,* 919 F.2d 143, citing *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 476, 103 S.Ct. 1303, 1311, 75 L.Ed.2d 206 (1983); and *Lynk v. LaPorte Superior Court No. 2,* 789 F.2d 554, 563 (7th Cir.Ind.1986). An alleged unconstitutional law enforced by a state court may be challenged in federal district court, but a court's particular application of the law to an individual cannot be challenged in federal district court. *Deimler,* citing *Feldman,* 460 U.S. 462, 485, 103 S.Ct. 1303, 1316, 75 L.Ed.2d 206. In *Deimler,* the Court concluded that plaintiffs lacked subject matter jurisdiction to seek review of a state court child custody proceeding.

In the instant case, mandamus as a remedy fails because a federal district court has no general mandamus jurisdiction

to compel action by state court officials. *Burris,* 825 F.Supp. 860, 861, citing *Davis v. Lansing,* 851 F.2d 72, 74 (2d Cir.N.Y.1988), and *Van Sickle v. Holloway,* 791 F.2d 1431, 1436 n. 5 (10th Cir.Colo.1986). There are three recognized standards which must be met for the Court to invoke its mandamus jurisdiction: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available. *Holmes v. Stark,* 575 F.Supp. 21, 22 (N.D.Ill.1983), citing *Americana Healthcare Corp. v. Schweiker,* 688 F.2d 1072, 1084 (7th Cir.Ind.1982). In the instant case, plaintiffs have not met the recognized standards for mandamus jurisdiction: (1) plaintiffs do not have a clear right to have this Court direct Judge Kaplan to vacate the appointment of Bernstein as guardian *ad litem* and to vacate the order awarding physical custody of Kristine to Mr. Offutt or to stay all proceedings; (2) Judge Kaplan does not have a plainly defined and peremptory duty to vacate his orders or stay proceedings; and (3) plaintiffs have the remedy at law to utilize the procedural mechanism provided by the state judicial system, i.e., the appellate process [2]. Therefore, plaintiffs are not entitled to have this Court invoke its mandamus jurisdiction.

■ Next we address the issue of whether plaintiffs' claim as it relates to Judge Kaplan should be dismissed for failure to state a claim upon which relief can be granted. Judge Kaplan advances the immunity defense in his assertion that plaintiffs' motion should be dismissed pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted. In *Sipka v. Soet,* 761 F.Supp. 761 (D.Kan.1991), appeal dismissed 940 F.2d 1539, plaintiff brought action alleging that she was denied due process, equal protection, that full faith and credit was not given to a state of Kansas court order and that court officials had denied her right to present evidence and cross-examine witnesses. Plaintiff alleged that some or all of the defendants were engaged in a conspiracy to deprive her and her children of their constitutional rights. Plaintiff sought temporary and permanent injunctive relief against all Michigan state court action and money damages in an amount in excess of $50,000. The District Court held that: (1) the mother's claim for injunctive relief would not be granted; (2) the judge was absolutely immune from damage liability; (3) the mother's cause of action was not ripe for adjudication under the federal civil rights statute; and (4) the mother had no claim under the civil rights statute providing a remedy for deprivation of equal protection or equal privileges and immunities. The complaint was dismissed with prejudice as to the claim for money damages from Judge Soet and dismissed without prejudice as to the remaining defendants and claims.

■ The *Sipka* court reasoned that Section 1983 of Title 42 of the United States Code, does not create any substantive rights, but provides a recovery for the deprivation of federal rights. The court examined whether the alleged deprivation was made by a person acting under color of state law. The Court concluded that judges defending against section 1983 actions are absolutely immune from damage liability for acts performed in their judicial capacity and Judge Soet is absolutely immune from damage liability. A judge will not be deprived of immunity because the action taken was in error, was done maliciously, or was in excess of his authority; rather, will be subject to liability only when the judge has acted in the clear absence of all jurisdiction. *Sipka,* 761 F.Supp. 761, 765, citing *Stump v. Sparkman,* 435 U.S. 349, 356–57, 98 S.Ct. 1099, 1104–05, 55 L.Ed.2d 331 (1978).

In the instant case, there is nothing alleged in the petition to suggest that Judge Kaplan has acted in clear absence of all jurisdiction which would subject him to liability. Judge Kaplan dealt with plaintiff as a litigant in a child custody dispute. As in *Sipka,* Judge Kaplan had jurisdiction over the parties, therefore he is not liable for acts performed in his judicial capacity. The acts plaintiffs complain of are of the kind normally performed by a judge and plaintiff was

---

**2.** Attorney Narda C. Offutt has filed an interlocutory appeal in the Illinois Appellate Court relating to the custody order entered by Judge Kaplan.

dealing with Judge Kaplan in his judicial capacity, thus suit for damages cannot be entertained. *Heldstab v. Liska, et al.,* 911 F.2d 736 (7th Cir.Wis.1990), *cert. denied* 498 U.S. 1090, 111 S.Ct. 971, 112 L.Ed.2d 1057 (1991), citing *Dellenbach v. Letsinger,* 889 F.2d 755, 759 (7th Cir.Ind.1989), *cert. denied* 494 U.S. 1085, 110 S.Ct. 1821, 108 L.Ed.2d 950 (1990).

 Judge Kaplan further asserts that any equal protection claim must be dismissed because plaintiff does not claim she was treated differently than others because of being a member of any group or classification, nor even that she was treated differently than others similarly situated. A complaint alleging a violation of equal protection based on dissimilar treatment must allege that plaintiffs were treated in a manner different from similarly situated individuals. *Pollard v. City of Chicago,* 643 F.Supp. 1244, 1252 (N.D.Ill.1986). We agree that plaintiffs' Equal Protection claim is devoid of facts to support an essential element that they were treated differently than similarly situated parties due to their membership in a protected class. Also, as stated above, since Judge Kaplan had jurisdiction over the parties, he is not liable for money damages for acts performed in his judicial capacity. *Sipka,* 761 F.Supp. 761, 765.

 The next issue is whether the abstention doctrine compels this court to refrain from entertaining this dispute and thereby interfering with the circuit court proceeding. Judge Kaplan asserts alternatively that this court should abstain from hearing this action because of pending state court proceedings. As the court stated in *Trust & Investment Advisers, Inc. v. Hogsett,* 43 F.3d 290 (7th Cir.Ind.1994), the abstention doctrine is reserved for rare application.

Under criteria established in previous decisions construing the anti-injunction statute, section 1983 is an Act of Congress that falls within the "expressly authorized" exception of that law. *Id.* And while § 1983 cases are an exception to the stringent prohibition on federal courts interfering with state court proceedings in most civil cases, that fact of being an exception does not preclude abstention by federal courts under appropriate circumstances.

Pursuant to 28 U.S.C. 2283, a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by acts of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. *Younger,* 401 U.S. 37, 53, 91 S.Ct. 746, 755. The Supreme Court long ago recognized that federal injunctive relief against a state court proceeding can in some circumstances be essential to prevent great, immediate, and irreparable loss of a person's constitutional rights. *Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed.2d 705 (1972). The *Mitchum* Court reasoned:

> "Section 1983 was thus a product of a vast transformation from the concepts of federalism that had prevailed in the late 18th century when the anti-injunction statute was enacted. The very purpose of s 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' *Ex parte Virginia,* 100 U.S. [339], at 346, 25 L.Ed. 676 [ (1879) ] In carrying out that purpose, Congress plainly authorized the federal courts to issue injunctions in s 1983 actions, by expressly authorizing a 'suit in equity' as one of the means of redress."

 The Anti–Injunction Act did not preclude a mother from seeking injunctive relief from a pending Michigan divorce and custody action, where the mother was alleging jurisdiction under the federal civil rights statute. *Sipka,* 761 F.Supp. 761. However, mere apprehension that a state court will not adequately protect a federal right was not a sufficient basis for issuance of injunction restraining further proceedings in state court. *Chandler v. O'Bryan,* 404 U.S. 980, 92 S.Ct. 442, 30 L.Ed.2d 364 (1971). In order to overcome the interdiction of federal interference in state judicial proceedings two express pre-conditions must be shown before relief

may be granted to a federal plaintiff; (1) the moving party must demonstrate that he will suffer irreparable injury if the federal court stays its hand; and (2) the moving party must demonstrate that he does not have an adequate remedy at law in the state courts. *Duke v. State of Texas,* 477 F.2d 244, 248 (5th Cir.Tex.1973).

In the instant case, plaintiffs make claims of irreparable harm due to defendants' precluding Kristine from attending a prominent Episcopalian girls' school in Washington, D.C., where prominent figures such as Vice President Al Gore's daughter attends, and James Baker, former Secretary of State, educated his daughter. Also, while Mrs. Offutt raises concerns about matters such as Kristine's hair being cut and where Kristine attends school, Mrs. Offutt does not allege facts to show any physical or emotional harm to Kristine. Plaintiffs have failed to show irreparable injury will result if this court abstains. Furthermore, plaintiffs have not demonstrated that they do not have an adequate remedy at law in the pending state court child custody action or their likelihood of success on the merit to warrant an injunction by this court. Plaintiffs could appeal any final and some interlocutory orders entered by Judge Kaplan or any other judge, by filing such an appeal in the Illinois Appellate Court. *Sipka,* 761 F.Supp. 761, 767. In fact, plaintiffs have availed themselves of such remedies by filing an appeal of an order entered by Judge Kaplan which currently pends in the Appellate Court. Furthermore, if dissatisfied with the outcome of that appeal plaintiffs could seek leave to appeal to the Illinois State Supreme Court, any order entered by the Illinois Appellate Court. Thus, the state judicial system provides an adequate remedy at law.

■ Before a federal court will apply the *Younger* abstention doctrine, so as to refrain from enjoining an ongoing state proceeding, (1) the judicial or judicial-in-nature state proceeding must be ongoing, (2) proceedings must implicate important state interests; and (3) there must be adequate opportunity in the state court proceeding to raise constitutional challenges. *Id.,* citing *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *American Federation of State, County & Mun. Employees v. Tristano,* 898 F.2d 1302, 1305 (7th Cir.Ill.1990).

■ As in *Trust,* plaintiffs do not dispute the presence of the first two *Younger* elements. A state judicial proceeding is currently pending in the Domestic Relations Division of the Circuit Court of Cook County as well as before the Illinois Appellate Court involving this custody dispute. The child custody issue raised in the state court proceedings implicates Illinois' strong interests in protecting the interests of children and family. As in *Trust,* plaintiffs' argument rests on their contention that the underlying state proceedings are inadequate to protect their constitutional rights. Plaintiffs allege bias or to have otherwise been prejudiced in the proceedings. When the state tribunal is deemed to be biased or to have otherwise prejudiced the controversy, abstention in deference to the state proceeding under *Younger* is inappropriate. *Trust,* 43 F.3d 290, citing *W.C.M. Window Co. v. Bernardi,* 730 F.2d 486, 491 (7th Cir.Ill.1984); and *United Church of the Medical Center v. Medical Center Com'n,* 689 F.2d 693, 697–98 n. 3 (7th Cir.Ill.1982).

In opposing the *Younger* abstention doctrine, plaintiffs suggest that *Younger* is not applicable because *Younger* concerns only injunctions in state criminal proceedings. Plaintiffs' assertion on that issue is flawed. The *Younger* doctrine has been expanded beyond state criminal prosecution to various civil proceedings in state court implicating important state interests. *Trust,* 43 F.3d 290, citing *New Orleans Public Service, Inc. v. Council of City of New Orleans,* 491 U.S. 350, 367–68, 109 S.Ct. 2506, 2517–18, 105 L.Ed.2d 298 (1989).

■ As to the invocation of § 1332 of Title 28 U.S.C., under the domestic relations exception to federal diversity jurisdiction, the federal courts have declined to accept jurisdiction over domestic relations or custody disputes subject to state laws and state court disposition. *Sipka,* 761 F.Supp. 761, 767; and *Ankenbrandt v. Richards,* 504 U.S. 689,

701–03, 112 S.Ct. 2206, 2214, 119 L.Ed.2d 468 (1992). In *Ankenbrandt* the court reasoned: "Not only is our conclusion rooted in respect for this long-held understanding, it is also supported by sound policy considerations. Issuance of decrees of this type not infrequently involves retention of jurisdiction by the court and deployment of social workers to monitor compliance. As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees. Moreover, as a matter of judicial expertise, it makes far more sense to retain the rule that federal courts lack power to issue these types of decrees because of the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees. See *Lloyd v. Loeffler,* 694 F.2d 489, 492 (7th Cir.Wis.1982)."

■ The abstention doctrine is designed to promote federal-state comity and is required when to render a decision would disrupt the establishment of a coherent state policy. *Id.* Thus, this court declines jurisdiction based on the domestic relations exception to diversity jurisdiction and abstains under the doctrine of *Younger,* supra, since there is a child custody proceeding pending in state court and the pre-conditions for not abstaining have not been met by plaintiffs.

## B. *Defendant Howard Bernstein:*

■ We next consider whether the petition pertaining to Mr. Bernstein states a claim upon which relief can be granted. In their petition plaintiffs allege that Mr. Bernstein, guardian *ad litem,* wilfully, recklessly or negligently, or intentionally violated plaintiffs' federal civil rights, in that he failed to: (1) protect the best interest of Kristine Offutt; (2) interview Mrs. Offutt or contact her in any way at any time; (3) attempt to resolve the differences between Mrs. Offutt and Gerald Moody Offutt, and confer with Mrs. Offutt; (4) use the supportive services of the court; (5) act as an advocate of the best interests of Kristine Offutt; (6) make any inquiries as to the well-being of plaintiffs; and (7) to bring to the court's attention or ascertain Kristine Offutt's preference. In the response in opposition to dismissal, plaintiffs allege that prior to Mr. Bernstein's appointment as guardian *ad litem* Kristine had every conceivable benefit society could offer and after his appointment, her meticulously constructed home in Washington, D.C., of seven years was demolished within weeks.

Mr. Bernstein contends in his motion to dismiss based upon Rule 12(b)(6) that the complaint fails to state a claim upon which relief can be granted because: (1) they have not pled sufficient facts to establish a violation of 42 U.S.C.1983; (2) they have not alleged any constitutionally protectible interest that Mr. Bernstein has violated under 42 U.S.C.1983; (3) they have not alleged that Mr. Bernstein acted under color of state law as required by 42 U.S.C.1983; (4) they have not alleged that defendant has violated any part of the Civil Rights Acts of 1964 (42 U.S.C. 2000e et seq.); and (5) as a guardian *ad litem,* Mr. Bernstein is immune from suits against him for actions taken in his capacity as a guardian. Mr. Bernstein claims that his status as a guardian *ad litem* gives him absolute immunity from suit in the performance of his guardian *ad litem* duties.

■ The conduct of counsel, either retained or appointed, in representing clients, does not constitute action under color of state law for purposes of a section 1983 violation. *Bilal v. Kaplan,* 904 F.2d 14, 15 (8th Cir.Ark.1990), citing *Harkins v. Eldredge,* 505 F.2d 802, 803 (8th Cir.Mo.1974); *Eling v. Jones,* 797 F.2d 697, 699 (8th Cir. Minn.1986), *cert. denied,* 480 U.S. 917, 107 S.Ct. 1371, 94 L.Ed.2d 687 (1987). In *Bilal,* plaintiff brought action against an attorney, Mr. Kaplan, under the civil rights statute. Bilal's contention was that attorney Kaplan: (1) agreed to represent him but failed to make himself available to him until the week before trial and failed to appear in court at trial; and (2) caused his case to linger in the district court for over seven years, hence ruining his possible professional trade career and causing him great mental strain. Bilal sought monetary damages and an opportuni-

ty to have a trial on the merits. The United States District Court for the Eastern District of Arkansas, held that diversity jurisdiction was defeated and a federal question was not involved, and dismissed the action. Plaintiff filed a petition for a writ of mandamus in the Eighth Circuit Court of Appeals. The Circuit Court affirmed the decision of the District Court. The Circuit Court held that the conduct of a counsel, either retained or appointed, in representing clients, does not constitute action under color of state law, for purposes of a violation of the civil rights statute. The court reasoned:

> "If the sufficiency of the jurisdictional allegations is challenged by the court or an opposing party, the burden of proof as to the existence of federal jurisdiction is on the party that claims that jurisdiction exists. Citing *McNutt v. General Motors Acceptance Corp.* 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). Moreover, federal court jurisdiction must affirmatively appear clearly and distinctly. The mere suggestion of a federal question is not sufficient to establish the jurisdiction of federal courts. *See Koll v. Wayzata State Bank*, 397 F.2d 124, 127 (8th Cir. Minn.1968)."

In any 1983 action, the plaintiff must prove that the conduct complained of was committed under color of state law and that "this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Magnuson v. City of Hickory Hills*, 933 F.2d 562, 566 (7th Cir.Ill.1991). In the case at bar, as with *Bilal*, plaintiffs have failed to allege factually that Bernstein acted under color of state law. Plaintiffs' mere suggestion of a federal question is not sufficient to establish the jurisdiction of federal courts. *Bilal*, 904 F.2d 14, 15.

Next we address the issue of whether Bernstein is entitled to immunity in his role as guardian *ad litem*. Although no Illinois case has addressed the issue of immunity with respect to a guardian *ad litem's*

conduct in a judicial proceeding, state courts which have addressed the general issue of guardian *ad litem* immunity have granted guardian *ad litem* absolute immunity. *Scheib v. Grant*, 22 F.3d 149 (7th Cir.Ill. 1994).[3] The *Scheib* Court reasoned that:

> "Absent absolute immunity, the specter of litigation would hang over a guardian *ad litem's* head, thereby inhibiting a guardian *ad litem* in performing duties essential to the welfare of the child whom the guardian *ad litem* represents. We believe that the Illinois Supreme Court would find this reasoning persuasive and grant a court-appointed guardian *ad litem* absolute immunity from lawsuits arising out of statements or conduct intimately associated with the guardian *ad litem's* judicial duties."

In *Collins v. Tabet*, 111 N.M. 391, 806 P.2d 40, 44 (N.M.1991), the court held that a guardian *ad litem* acted as a judicial officer and was entitled to immunity. The *Collins* Court reasoned:

> "The guardian is appointed to perform an integral part of the judicial process as an arm of the court. Moreover, I am not convinced that, even if a guardian is appointed to a position requiring active advocacy, he should not be granted immunity. I cannot distinguish that role from his role as an arm of the court. It is the court's role to safeguard the interests of the child. If that role requires advocacy, the guardian is, nonetheless, functioning for the court in representing the child, and not, for example, as an attorney hired by the child or its family. I simply cannot separate the guardian's derivative responsibility to the minor from the court's primary responsibility."

As in *Scheib* and its progeny cases, we conclude that Bernstein, as a guardian *ad litem*, acted as a judicial officer and was entitled to immunity. Bernstein was appointed by Judge Kaplan to safeguard the best interest of Kristine. Plaintiffs' allegations that Bernstein wilfully, recklessly or

---

3. Citing *Bird v. Weinstock*, 864 S.W.2d 376, 383 (Mo.App.1993), *Collins v. Tabet*, 111 N.M. 391, 806 P.2d 40, 44 (N.M.1991), *Penn v. McMonagle*, 60 Ohio App.3d 149, 573 N.E.2d 1234, 1237 (1990), *Tindell v. Rogosheske*, 428 N.W.2d 386, 387. (Minn.1988); and *Kurzawa v. Mueller*, 732 F.2d 1456, 1458 (6th Cir.Mich.1984).

negligently ignored Kristine's care, custody and education are conclusory and not factual.

### C. *Defendants Gerald Moody Offutt and Arthur M. Berman:*

■ We next examine whether private parties, Mr. Offutt and Mr. Berman, under color of law for the purposes of section 1983, jointly engaged with state officials to deprive plaintiffs of their civil rights. Mr. Offutt and Mr. Berman maintain that this action should be dismissed pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) and this court should abstain from interfering with the state court action. The abstention doctrine previously discussed is likewise applicable to Mr. Offutt and Mr. Berman; therefore, this discussion will not be repeated.

■ Parents have a fundamental liberty interest in the care, custody. and management of their children; A parent who is wrongfully deprived of physical custody of his or her children without due process of law has a cause of action under section 1983. *Sipka,* 761 F.Supp. 761, 766. Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of section 1983. *Hooks v. Hooks,* 771 F.2d 935 (6th Cir.Tenn. 1985). To show that a private party acted under color of state law, plaintiffs will have to allege that they acted in concert with state action. *Heldstab,* 911 F.2d 736, citing *Dennis v. Sparks,* 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); and *Moore v. Marketplace Restaurant, Inc.,* 754 F.2d 1336, 1352–54 (7th Cir.Ill.1985). Section 1983 liability continues to require, at minimum, some overt and significant participation, by the party acting in concert with state action, in the challenged action. *Hoai v. Vo,* 935 F.2d 308, 313 (D.C.Cir.1991), *cert. denied* by 503 U.S. 967, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992).

In *Heldstab,* the complaint contained only unsupported conclusory assertions that the private parties, Bichler, Sotos, Resnick and the law firm of Jacobson, Sotos and Krings conspired with a state actor. The *Heldstab* court ruled that plaintiff failed to show evidence of a conspiracy between private and public actors intending to deprive him of his federally protected rights, and thereby, dismissed the suit.

In *Hooks,* plaintiff under 28 U.S.C.1983, brought action against defendants, Stephen Hooks, her ex-husband; Bill and Charlotte Hooks, Stephen's parents; Gene Mullins· and Don Churchill, purported to be friends of Stephen Hooks; Lt. Robbie Webb and Patrolman Bob Garner of the Blount County, Tennessee Sheriff's Department; Donna Wheeler, Susan Dunn and Maxiene Stinett, civilian employees of the Blount County Sheriff's Department; and Ken Cornett, an employee of the State of.Tennessee Department of Human Services, alleging that defendants conspired to and did deprive her of the custody of her children, Katonya Denise Hooks and Stephen Roy Hooks II, without due process of law and in violation of the Parental Kidnapping Prevention Act of 1980. The District Court granted defendants' various motions to dismiss and for summary judgment.

■ A conspiracy is demonstrated by the showing of a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused the injury to the complainant. *Hooks,* 771 F.2d 935, citing *Hobson v. Wilson,* 737 F.2d 1, 51–52 (D.C.Cir.1984). The *Hooks* court concluded that in applying the conspiracy principles and assuming plaintiffs' allegations to be true, there were no facts or inferences therefrom to support her civil rights claim against Mullins and Churchill or Charlotte and Bill Hooks.

As in *Hooks,* plaintiffs do not allege a single plan, that the alleged co-conspirators shared in a general conspiratorial objective, or that an overt act was committed in furtherance of a conspiracy that caused injury to plaintiffs. Also, as in Hooks there are no facts alleged to support plaintiffs' civil rights claim against defendants. Plaintiffs' claims lack material factual allegations and contain a plethora of legal conclusions that Mr. Bernstein and Mr. Berman, white males and Mr. Offutt, a black male induced Judge Kaplan, a white male, to discriminate against plaintiffs based on race, sex, color and religion. Plaintiffs also make hollow claims of irreparable

**1194**

harm due to defendants' precluding Kristine from attending a prominent Episcopalian girls' school in Washington, D.C., where prominent figures such as Vice President Al Gore's daughter attends, and James Baker, former Secretary of State, educated his daughter.

 In the instant case, as in *Heldstab*, plaintiffs have not alleged sufficient facts to support a conclusion that there was a conspiracy. It is not enough merely to raise a metaphysical possibility that defendants might have conspired; there must be facts which show the existence of a conspiracy. *Heldstab*, 911 F.2d 736, citing *Rodgers v. Lincoln Towing Service*, 771 F.2d 194, 198 (7th Cir.Ill.1985). As in *Heldstab*, plaintiffs' allegations cannot meet this standard with only unsupported conclusory assertions that defendants conspired with state actors.

Plaintiffs cover a wide field with a hit-or-miss effectiveness to make assertions that pursuant to 28 U.S.C. 1331, 28 U.S.C. 1332, 28 U.S.C. 1343, 28 U.S.C. 1651 and 42 U.S.C. 2000e of the 1964 Civil Rights Act of 1964, defendants violated her rights under the Due Process Causes of the 14th Amendment of the United States Constitution. Plaintiffs have failed to allege sufficient facts to support their assertions that any of the above sections are applicable.

Lastly, to sustain a claim under the Due Process Clause plaintiffs must demonstrate: (1) a cognizable property interest; (2) a deprivation of that property interest; and (3) a denial of due process. *Buttitta v. City of Chicago*, 9 F.3d 1198, 1201 (7th Cir.Ill. 1993). Mrs. Offutt is able to demonstrate a cognizable liberty interest in the care, custody and management of her child. *Sipka*, 761 F.Supp. 761, 766. However, Mrs. Offutt is not able to demonstrate that she has been wrongfully deprived of the physical custody of her child. Mrs. Offutt: (1) had and still has an opportunity to be heard in a pending state trial court proceeding; (2) has a pending appeal of an interlocutory order of the state trial court in the Illinois Appellate Court; and (3) possibly has a further opportunity to be heard in the Illinois Supreme Court.

## V. CONCLUSION.

For the reasons discussed above, this court grants defendants Judge Kaplan and Bernstein's motions to dismiss with prejudice and grants defendants Berman and Offutt's motions to dismiss.